# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PLATINUM UNDERWRITERS BERMUDA, LTD., <br>     Petitioner, <br><br> v. <br><br> EXCALIBUR REINSUREANCE CORP. (f/k/a PMA CAPITAL INSURANCE CO.), <br>     Respondent. | : <br> : <br> : <br> : <br> :     Misc. No. 12-70 <br> : <br> : <br> : <br> : <br> : |

**Diamond, J.**                                                                                                                    **July 15, 2013**

## MEMORANDUM

This is the second time I have been asked to review an arbitration award respecting the 2003 reinsurance agreement between Platinum Underwriters Bermuda, Ltd. and Excalibur Reinsurance Corp. See PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 659 F. Supp. 2d 631, 634 (E.D. Pa. 2009), aff'd, 400 F. App'x 654 (3d Cir. 2010). Platinum asks me to confirm this new arbitration Award; Excalibur asks me to vacate it. (Doc. Nos. 1, 6.) Because the arbitrators did not "exceed[] their powers," I will confirm the Award. 9 U.S.C. § 10(a)(4).

**I.     BACKGROUND**

    **a.  The 2003 Reinsurance Contract**

In 2003, Platinum and Excalibur—then known as PMA Capital Insurance Co. ("PMA")—entered into a reinsurance agreement by which Platinum (a reinsurer) agreed to indemnify PMA (the reinsured) with respect to losses arising from PMA-issued insurance policies. The Contract covers the 2003 calendar year. Platinum and Arch Re are two of several "subscribing reinsurers," each having a prescribed share of the interests and liabilities set out in the 2003 Contract. Platinum's share is 25%. PMA had previously entered into two similar

contracts with reinsurers other than Platinum—one covering 1999-2001, the other covering 2002.

As in their first arbitration, the Parties here dispute the operation of the 2003 Contract's "experience account" and "deficit carry forward." An experience account is a bookkeeping record maintained by the reinsured that represents the premium paid by the reinsured to the reinsurer. It is an asset of the reinsurer. As claims come due, the reinsured debits the experience account. If the experience account becomes depleted, the reinsurer must pay any remaining obligations from some other source. When parties enter into separate reinsurance contracts covering different years, a deficit carry forward allows the reinsurer to "carry forward" to Year 2 any loss incurred in Year 1 by applying funds remaining in Year 2's experience account to offset Year 1 losses.

The 2003 Contract states that upon "commutation" (*i.e.*, when all performance obligations are extinguished), the reinsurers will relinquish to PMA any balance remaining in the experience account "less any projected paid loss deficit, if any, in respect of [the 1999-2001 Contract]." (2003 Contract, Art. 19.) This reference to the 1999-2001 Contract is part of the 2003 Contract's "deficit carry forward" provision. (<u>See</u> <u>also</u> 2003 Contract, Art. 15.) The 2003 Contract thus explicitly provides that any deficit under the 1999-2001 Contract is deducted from the 2003 experience account. (<u>Id.</u>)

The 2003 Contract also includes an "honorable engagement clause," which requires the arbitrators to

> interpret this Agreement as an honorable engagement and not merely as a legal obligation. [The arbitrators] are relieved of all judicial formalities and may abstain from following the strict rules of law. They will make their award with a view to effecting the general purpose of this Agreement in a reasonable manner rather than in accordance with a literal interpretation of the language.

2

(2003 Contract, Art. 25.)

**b. The First Dispute and 2009 Arbitration Award**

Disagreement over the operation of the 2003 Contract's experience account and deficit carry forward dates back to at least 2005. The Parties arbitrated that dispute in 2008. On May 22, 2009, the arbitrators issued their award: they deleted the deficit carry forward from the 2003 Contract, and ordered PMA immediately to pay $6 million to Platinum. The arbitrators offered no reasoning or explanation for their decision and none was apparent.

On September 15, 2009, I granted PMA's petition to vacate the May 22nd award. PMA Capital, 659 F. Supp. 2d at 634. I noted that the 2003 Contract itself required the *enforcement* of the deficit carry forward provision, not its *elimination*. Id. at 637. I further noted that the "honorable engagement clause" did not give the arbitrators authority to delete the carry forward. Id. Moreover, neither Party had sought this "relief" or the immediate payment of $6 million. Accordingly, I concluded that the arbitrators' decision could not rationally be derived from the 2003 Contract or the arbitration itself. Id. The Third Circuit affirmed. PMA Capital Ins. Co. v. Platinum Underwriters Bermuda, Ltd., 400 F. App'x 654, 656 (3d Cir. 2010).

**c. The Second Dispute and 2012 Arbitration Award**

The Parties continued to disagree over the operation of the experience account and deficit carry forward. PMA believed that the carry forward does not entitle Platinum to any funds remaining in the 2003 experience account after any deficit from the 1999-2001 Contract is "carried forward" because Platinum is not a party to the 1999-2001 Contract. Platinum believed that PMA's interpretation would render the 2003 deficit carry forward provision meaningless as to Platinum.

The Parties also disagreed as to what effect, if any, PMA's 2002 reinsurance contract has

3

on the amount to be carried forward to the 2003 experience account. Although the 2003 Contract includes no reference to the 2002 Contract (which covers the 2002 calendar year), the 2002 and 2003 agreements are nearly identical: both include a provision purporting to carry forward any deficit from the 1999-2001 Contract. Platinum believed that the deficit from the 1999-2001 Contract should be brought directly forward to the 2003 Contract, unaffected by results under the 2002 Contract. PMA believed that any deficit carried forward to the 2003 Contract must "pass through" the 2002 Contract and thus reflect any 2002 experience account balance.

To resolve this dispute, Platinum sought a second arbitration in 2011, this time asking a new panel of arbitrators to declare that: 1) the 2003 Contract remains in full force and effect and is not rescinded; 2) the deficit carry forward in the 2003 Contract applies to Platinum; 3) the deficit to be brought forward to the 2003 Contract is the deficit from the 1999-2001 Contract, unaltered by any 2002 experience account surplus; and 4) upon commutation, Platinum will be entitled to retain its 25% share of the deficit carry forward, assuming there is a balance in the 2003 experience account. (Arbitration Hr'g. Tr. 25, Feb. 8, 2012.)

Pursuant to the 2003 Contract, PMA and Platinum each selected an arbitrator; together these two arbitrators selected a third—"neutral"—arbitrator. All three arbitrators were well-versed in reinsurance. (Arbitration Hr'g. Tr. 7-9.) From February 8-10, 2012, the Panel received evidence and heard argument in Philadelphia. (Final Award, ¶ B.) On February 14, 2012, a divided Panel, addressing seriatim each of Platinum's four requests, issued the following "Final Award":

    1. The 2003 contract remains in full force and effect and is not rescinded.
    2. The Panel finds no language in the 2003 contract which either excludes or specifically states that Platinum's 25% participation in the

4

contract does not have the benefit of the deficit from the 1999-2001 contract. This is further supported by evidence that Arch Re's (also a new reinsurer for the 2003 underwriting year) was approached by PMA's broker and gave their agreement to the deletion of subparagraph I (deficit carry forward from the 1999-2001 contract) in Article 15 of the contract. No agreement to this proposed change in Article 15 was ever given by Platinum, and both parties executed the contract with this provision contained in the wording.

3. Here again the contract wording specifically mentions that the deficit from the 1999-2001 contract is to be carried forward into the 2003 contract. There is no provision in the contract that provides for the adjustment of this December 31, 2001 deficit based upon the experience of the 2002 contract.

4. Upon Commutation of the 2003 contract, Platinum is entitled to retain 25 percent of the amount of the deficit under the 1999-2001 contract (as valued at December 31, 2001) before the remainder of the Experience Account under the 2003 contract is relinquished to PMA. Because the Experience Account under the 2003 contract is maintained by PMA but is an asset of the reinsurers, including Platinum, PMA will effectuate Platinum's retention of 25 percent of the amount of the deficit under the 1999-2001 contract by paying that amount of money to Platinum.

(Final Award, ¶ J.)

Platinum asks me to confirm this Final Award. (Doc. No. 1.) PMA asks me to vacate paragraphs 3 and 4. (Doc. No. 6.)

## II.    JURISDICTION AND VENUE

The Federal Arbitration Act provides for the enforcement of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 1958. See 9 U.S.C. §§ 201-08. Because the Final Award arose from a commercial relationship between a Bermuda citizen (Platinum) and a U.S. citizen (PMA), it falls under the Convention. 9 U.S.C. § 202. Accordingly, this Court has subject matter jurisdiction. 9 U.S.C. § 203 ("An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of

5

the United States.") Both Parties have consented to personal jurisdiction and correctly agree that venue is proper in this District (where the 2012 arbitration took place). 9 U.S.C. § 204.

### III. LEGAL STANDARDS

Under the FAA, the district court may vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). My "function in confirming or vacating a commercial arbitration award is [thus] severely limited." Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir. 1989) (quotations omitted). "Review of arbitration awards is 'extremely deferential,' and vacatur is appropriate only in 'exceedingly narrow' circumstances." Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., 260 F. App'x 497, 499 (3d Cir. 2008) (quoting Dluhos v. Strasberg, 321 F.3d 365, 370 (3d Cir. 2003)). I may not vacate an arbitration award simply because I disagree with it. Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 295 (3d Cir. 2010). Rather, I must conclude that there is "absolutely no support at all in the record justifying the arbitrator[s'] determinations." Id. (citing United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995)). "[T]he terms of the arbitral award will not be subject to judicial revision unless they are 'completely irrational.'" Mut. Fire, 868 F.2d at 56 (quoting Swift Indus. v. Botany Indus., 466 F.2d 1125, 1131 (3d Cir.1972)).

### IV. DISCUSSION

PMA challenges only portions of the Final Award, arguing that paragraph 3 is too literal an interpretation of the 2003 Contract and paragraph 4 is not literal enough. To state these contradictory contentions is to refute them. Even if PMA is correct—and it is not—I may vacate the Final Award only for irrationality, not for over or under "literality."

### a. Final Award Paragraph 3

PMA argues that in disregarding the 2002 Contract, the Panel erred because the 2003 Contract implicitly requires the 1999-2001 deficit to pass through the 2002 Contract when it is carried forward to the 2003 Contract. (Doc. No. 6, at 20.) Yet, the 2003 Contract *explicitly* requires the deficit from the 1999-2001 Contract to be carried forward to the 2003 Contract, and includes no mention of the 2002 Contract. The Panel heard evidence that in deciding whether to enter into the 2003 Contract, Platinum placed a value of $2.5 million to $5 million on the provision allowing Platinum to carry the deficit from the 1999-2001 Contract directly to the 2003 Contract. Platinum also relied on that anticipated benefit in deciding the positions it would take in negotiating other contractual provisions with PMA, such as premiums and profit margin. (Doc. No. 8, Grais Affidavit Ex. A 19-20.)

In light of the 2003 Contract's plain language and Platinum's reliance on that language, the Panel could certainly come to the rational conclusion that any deficit carried forward from the 1999-2001 Contract was never intended to be offset by any 2002 experience account surplus. PMA's contentions suggest, at most, an interpretation of the 2003 Contract that PMA deems preferable to that adopted by the Panel. That is beside the point. "[I]t is immaterial whether [I] believe the arbitrator[s'] analysis to be the best interpretation . . . it is sufficient that it be a permissible interpretation." <u>Retail Clerks Union Local No. 1557, AFL-CIO v. Murfreesboro Vending Serv., Inc.</u>, 689 F.2d 623, 626 (6th Cir. 1982) (per curiam). Because paragraph 3 of the Final Award is rational and hence permissible, I may not vacate it.

### b. Final Award Paragraph 4

PMA argues that because the 2003 Contract does not *explicitly* require PMA to pay Platinum the amount of any deficit arising under the 1999-2001 Contract, the arbitrators' award

7

of such a payment in paragraph 4 impermissibly "rewrites" the 2003 Contract. (Doc. No. 6, at 16.) Again, I disagree. It is undisputed that the 2003 experience account—the account to which any 1999-2001 "deficit" would be "carried forward"—is an asset of the reinsurers, including Platinum, which has a 25% interest in the 2003 Contract. PMA also does not object to the Panel's conclusion that the carry forward applies to Platinum. Article 19 of the 2003 Contract explicitly provides that upon commutation, the experience account balance is to be "relinquish[ed]" to PMA, "*less* any projected paid loss deficit." (2003 Contract, Art. 19 (emphasis added).) This necessarily means that, as the Panel decided, "[u]pon commutation of the 2003 Contract, Platinum is entitled to retain 25 percent" of the account balance. (Final Award, ¶ J(4).) In directing a payment from the 2003 experience account to Platinum reflecting Platinum's 25% interest in the account, the Panel sought only to realize the carry forward's object. (Final Award ¶ J(4) ("PMA will *effectuate* Platinum's retention of 25 percent . . . by paying that amount of money to Platinum.") (emphasis added).) This was not irrational. On the contrary, the Panel "effect[ed] the general purpose" of the 2003 Contract and acted "in a reasonable manner." (2003 Contract, Art. 25.)

### c. The Irrational 2009 Award; The Rational 2012 Award

As my 2009 decision demonstrates, I well understand that the arbitrators' discretion is not unbounded. Rather, their decision must in some "rational way be derived from the [2003 Contract]." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1295 (3d Cir. 1996). The 2009 and 2012 arbitration decisions are quite different, however.

In the 2009 decision, the arbitrators not only eliminated a key contractual provision, they appeared to have conjured their award from the vapors: neither PMA nor Platinum asked the arbitrators to eliminate the carry forward or award Platinum an "immediate" payment. In the

2012 Final Award, however, the Panel accepted the contractual interpretations Platinum urged and rejected the interpretations PMA urged (and continues to urge). The Panel did not eviscerate the 2003 Contract, but grounded its decision on the language of that Agreement. Having determined (without objection) that the deficit carry forward remains valid and applies to Platinum, the Panel then calculated the carry forward in a manner consistent with the Contract, and gave Platinum the benefit of its contractual bargain. Plainly, the Panel's decision "draw[s] its essence from the [2003] [C]ontract." Osceola Cnty. Rural Water Sys., Inc. v. Subsurfco, Inc., 914 F.2d 1072, 1075 (8th Cir. 1990). Accordingly, I may not disturb its Final Award. Compare Mut. Fire, 868 F.2d at 56, with Coast Trading Co. v. Pac. Molasses Co., 681 F.2d 1195, 1198 (9th Cir. 1982).

V.    **CONCLUSION**

For these reasons, I will confirm the 2012 Final Award.

An appropriate Order follows.

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.